521 S.E.2d 153

Phillip H. TANNER, a person under legal disability, Petitioner,

v.

FLORENCE COUNTY TREASURER; Florence County Delinquent Tax Administrator; and John Doe, a fictitious person representing all and every person claiming any interest in the real property described herein, Respondents.

No. 24985.

Supreme Court of South Carolina.

Submitted June 23, 1999.

Decided Aug. 9, 1999.

554

Phillip H. Tanner, of Effingham, pro se Petitioner.

James C. Rushton, III, of The Hyman Law Firm, of Florence, for respondents.

TOAL, Justice:

Phillip H. Tanner ("Petitioner") attempted to file a supplemental complaint in his action against the Florence County Treasurer and the Florence County Delinquent Tax Administrator (collectively "the County"). The trial court refused to allow the supplemental pleadings and the Court of Appeals upheld that decision. Petitioner appealed to this Court and we now reverse.

## Factual/Procedural Background

Petitioner owned five acres of land and a mobile home in Florence County. On October 3, 1994, while Petitioner was a prisoner in the Lee Correctional Institution, the County sold his property and mobile home at a delinquent tax sale. In March 1995, Petitioner's father redeemed the land for Petitioner during the statutory redemption period. The mobile home was not redeemed during the redemption period and the County eventually issued a tax title to B.P. Inc. of Olanta.

In March 1995, Petitioner brought this pro se action alleging the County failed to provide him the required notice under S.C.Code Ann § 12–51–40 (Supp.1998) of the delinquent tax sale of both his property and mobile home. Petitioner's complaint alleged that he had not received the required notice despite having given the County his prison address in August of 1993. Petitioner's complaint asked that the sale of his "real property" be declared void, but the complaint did not seek any monetary damages.

In its answer to the March 1995 complaint, the County asserted that Petitioner's redemption of the real property made his claim moot. Also, the County's answer asserted that the mobile home could be redeemed since Petitioner had filed the action during the statutory redemption period. By November 1995, however, the redemption period ended and Petitioner had not redeemed his mobile home so the County issued a tax title to B.P. Inc. of Olanta. In response to the issuance of a tax title on the mobile home, Petitioner filed a motion for leave to serve and file a supplemental complaint pursuant to Rule 15(d), SCRCP.

The County responded to Petitioner's motion to amend his complaint with a summary judgment motion pursuant to Rule 56, SCRCP. It asserted that under S.C.Code Ann. § 15–78–60(11) (Supp.1998)[1] of the South Carolina Tort Claims Act ("the Tort Claims Act"), the County was immune from Petitioner's claim. Petitioner responded with a motion in opposi-

---

1. Section 15–78–60 states:

 Exceptions to waiver of immunity.
 The governmental entity is not liable for a loss resulting from:
 (11) assessment or collection of taxes or special assessments or enforcement of tax laws;

tion to summary judgment and again motioned to serve and file a supplemental complaint. Petitioner's proposed supplemental complaint included a second cause of action against the County for negligence based on the special duty exception to the public duty doctrine as well as four new causes of action asserted against B.P. Inc. of Olanta for damages.

On May 7, 1996, a hearing on all the motions was held. When the hearing began, the County informed the trial judge that it was under the mistaken belief that Petitioner had already been granted leave to file his supplemental complaint. Based on this mistaken belief, the County's summary judgment motion also addressed Petitioner's second cause of action even though the supplemental complaint had not yet been approved by the trial court. At the hearing, the County asked the trial court to consider its motion for summary judgment as also being a motion opposing Petitioner's motion for leave to file a supplemental complaint.

The trial court found that Petitioner's recovery of his real property mooted his first claim against the County. Since this claim was moot, the trial court granted summary judgment to the County on Petitioner's first cause of action. The trial court then ruled that Petitioner was not allowed to supplement his complaint to add the second cause of action. The trial court held that the second cause of action based on a negligence claim would be defeated by the County's assertion of immunity under the Tort Claims Act.

Before the Court of Appeals, Petitioner argued that the trial court erred by granting summary judgment on his claim before hearing his motion to serve and file the supplemental complaint. Petitioner also argued that granting summary judgment on the second cause of action was error. In actuality, the trial judge did not grant summary judgment on the second cause of action. The trial judge simply refused to allow Petitioner to supplement his pleadings to include the second cause of action. The trial court refused the supplemental complaint because it found the negligence cause of action would be futile due to the County's immunity under the Tort Claims Act.

The Court of Appeals held that the Tort Claims Act exempted the County from tort liability as a matter of law and

therefore Petitioner could not maintain a negligence cause of action against the County. The Court of Appeals recognized that Petitioner could only maintain a negligence action against the County if he provided proof that the County failed to follow the proper procedure for the tax sale. In analyzing the Record, the Court of Appeals found that Petitioner had produced no proof that the County failed to follow proper procedure. *See Tanner v. Florence County Treasurer*, Op. No. 97–UP–677 (S.C.Ct.App. filed December 22, 1997). This Court granted certiorari to consider the following two issues:

I. Did the trial court err in granting summary judgment to the County after denying the Petitioner the right to amend his pleadings?

II. Should the Court of Appeals have addressed Petitioner's Public Duty Doctrine argument?

LAW/ANALYSIS

## I. Summary Judgment/Refusal to Allow Supplemental Pleadings

█ Petitioner argues the trial court improperly denied his motion for leave to file and serve a supplemental complaint. We agree.

█ Petitioner filed a motion under Rule 15(d), SCRCP, seeking to supplement his complaint by setting forth events that had transpired since his original complaint. Even though a supplemental pleading is technically different than a motion to amend the pleadings under Rule 15(a) SCRCP, the standard for granting or denying these motions is the same. *Cf.* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:* Civil 2d § 1504 (1990) ("Inasmuch as the discretion exercised by the court in deciding whether to grant leave to amend is similar to that exercised on a motion for leave to file a supplemental pleading, the court's inattention to the formal distinction between amendment and supplementation is of no consequence."). Therefore, South Carolina case law interpreting Rule 15(a), SCRCP, is authoritative in analyzing Petitioner's request to supplement under Rule 15(d), SCRCP.

■ Petitioner met the requirements of Rule 15(d), SCRCP, and should have been allowed to amend his complaint. Rule 15, SCRCP, provides that leave to amend shall be freely given when justice requires and does not prejudice any other party. *See* Rule 15, SCRCP; *Foggie v. CSX Transp., Inc.*, 313 S.C. 98, 431 S.E.2d 587, 590 (1993). It is well established that a motion to amend or supplement is addressed to the discretion of the trial judge, and the party opposing the motion has the burden of establishing prejudice. *Id.*

■ In the current case, the County failed to argue that allowing the supplemental pleading would be prejudicial. "The prejudice Rule 15 envisions is a lack of notice that the new issue is going to be tried, and a lack of opportunity to refute it." *Pool v. Pool*, 329 S.C. 324, 494 S.E.2d 820 (1998). It is the responsibility of the party opposing an amendment or supplemental complaint to establish prejudice. *Forrester v. Smith & Steele Builders, Inc.*, 295 S.C. 504, 507, 369 S.E.2d 156, 158 (Ct.App.1988). In the current case, there is no such prejudice. : The County not only had notice that Petitioner wanted to supplement the complaint, it already thought the trial court had allowed the supplemental pleading. In such a situation there would be no prejudice to the County in allowing Petitioner to file the supplemental complaint.

■ Instead of arguing prejudice, the County argued that its immunity under the Tort Claims Act would make amendment of the pleadings futile. The trial court agreed and made no findings that the supplemental pleading would prejudice the County. The Court of Appeals affirmed, stating:

[A]s a matter of law, [Petitioner] could not maintain an action against County for its actions surrounding the sale of his mobile home *absent any evidence* that the County failed to follow the proper procedure involving the tax sale.

(emphasis added). In his complaint, Petitioner alleged that he had provided the County with his correct prison address. Petitioner also alleged in his complaint that he had received mail from the County at his correct prison address. The notice statute required the County to send Petitioner notice:

... at the best address available which is either the address shown on the deed conveying the property to him, the

property address, or such other corrected or forwarding address that the current owner of record has filed with the appropriate tax authority, of which corrected or forwarding address the officer authorized to collect delinquent taxes, assessments, penalties, and costs has actual knowledge, or to a known grantee of the delinquent taxpayer of the property on which the delinquency exists.

S.C.Code Ann. § 12–51–40(a) (Supp.1998).

The County does not dispute Petitioner's allegations concerning his updated address. Instead, the County maintains that under the Tort Claims Act it cannot be held liable because there is no evidence in the Record that Petitioner's claims concerning his correspondence with the County are true.

■ Generally, at the pleadings stage, the factual allegations made by the plaintiff in regards to his claim are taken as true. *Accord Bankers Trust Co. v. Braten,* 317 S.C. 547, 455 S.E.2d 199 (Ct.App.1995). At the initial hearing on supplementation, Petitioner was not required to provide evidence to the Court of his allegation. The Court of Appeals specifically recognized that the immunity defense might not be available to the County if Petitioner could provide evidence that the County had his correct address. The trial court and the Court of Appeals both erred by requiring Petitioner to present this evidence at the pleadings stage in order to allow the supplemental complaint.

If the Court had properly allowed the supplemental complaint, then summary judgment at that same hearing would have been inappropriate. Rule 56, SCRCP, requires 10 days notice before a hearing on a summary judgment motion. *See* Rule 56(c), SCRCP. Awarding summary judgment at the same hearing granting a supplemental complaint would violate the notice requirement. The prejudice in doing so is obvious in this case where Petitioner was not given the opportunity by the trial court to produce any evidence in support of his claim. As a result, we reverse the decision of the Court of Appeals so that Petitioner can file a supplemental complaint that includes his negligence cause of action.

## II. Special Duty Exception to the Public Duty Doctrine

■ Petitioner also argues that the trial court and Court of Appeals erred by not addressing his negligence claim based on the special duty exception to the public duty doctrine. We agree.

■ Initially, we recognize the difference between immunity under the Tort Claims Act and the public duty doctrine.

> Immunity is an affirmative defense which must be pleaded and can be waived. One who pleads immunity conditionally admits the plaintiff's case, but asserts immunity as a bar to liability. In contrast, the public duty rule is a negative defense which denies an element of the plaintiff's cause of action—the existence of a duty of care to the individual plaintiff. The burden is on the plaintiff to show a duty of care was owed to him. *Rayfield v. South Carolina Dep't of Corrections,* 297 S.C. 95, 105–06, 374 S.E.2d 910, 916 (Ct. App.1988), *cert. denied,* 298 S.C. 204, 379 S.E.2d 133 (1989). In the context of a negligence action, the public duty rule may be stated as follows: a statute prescribing the duties of a public office does not, without more, impose on the person holding that office a duty of care towards individual members of the public in the performance of those duties. *Id.* at 105, 374 S.E.2d at 915–16.

*Wells v. City of Lynchburg,* 331 S.C. 296, 501 S.E.2d 746, 752 (Ct.App.1998).

■ Even where the County does not have tort immunity, to make out a claim of negligence against the County under South Carolina law, Petitioner "must show (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." *Andrews v. Piedmont Air Lines,* 297 S.C. 367, 377 S.E.2d 127, 128 (1989). Ordinarily, under South Carolina's public duty doctrine, public officials are "not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than [to] anyone individually." *Jensen v. Anderson County Dep't of Soc. Services,* 304 S.C. 195, 199, 403 S.E.2d 615, 617 (1991).

■ In *Summers v. Harrison Constr.*, 298 S.C. 451, 381 S.E.2d 493 (Ct.App.1989), the Court of Appeals stated that "statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public," and that "[s]uch statutes create no duty of care towards individual members of the general public." *Id.* S.C. at 455–56, 381 S.E.2d at 496. Under South Carolina law, however, a "special duty" to particular individuals may be created by such a statute when:

(1) an essential purpose of the statute is to protect against a particular kind of harm;

(2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;

(3) the class of persons the statute intends to protect is identifiable before the fact;

(4) the plaintiff is a person within the protected class;

(5) the public officer knows or has reason to know of the likelihood of harm to members of the class if he fails to do his duty; and

(6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

*See Brady Dev. Co. v. Town of Hilton Head Island,* 312 S.C. 73, 439 S.E.2d 266, 268 (1993).

In general, we have been reluctant to find special duties statutorily imposed. *See, e.g., Brady Dev. Co. v. Town of Hilton Head Island,* 312 S.C. 73, 439 S.E.2d 266, 268 (1993) (holding that the town's Development Standards Ordinance was intended to protect the public from over-development, not to protect homeowners from deprivation of water and other services); *Bellamy v. Brown,* 305 S.C. 291, 408 S.E.2d 219, 220–21 (1991) (holding that statutorily prescribed exceptions to the disclosure requirements of the state's Freedom of Information Act did not establish a duty to maintain confidentiality); *see also Summers v. Harrison Constr.,* 298 S.C. 451, 381 S.E.2d 493 (Ct.App.1989) (holding that a state statute requiring officers who issue building permits to secure evidence that the builders and renovators of residences are

licensed did not create a special, actionable duty to protect homeowners); *Jensen v. South Carolina Dep't of Soc. Services,* 297 S.C. 323, 377 S.E.2d 102, 105–07 (Ct.App.1988) (holding that the state's Child Protection Act, which required state and local officials to carry out various training, monitoring, reporting, and investigative responsibilities, did impose on local officials to whom instances of alleged child abuse had been reported a special duty to investigate and intervene, but did not impose on state officials a special duty to protect particular children); *Rayfield v. South Carolina Dep't of Corrections,* 297 S.C. 95, 374 S.E.2d 910, 916–17 (Ct.App.1988) (holding that a state statute requiring prison and parole officials to keep records of prisoners' habits and deportment and to prepare adequate reports concerning parole candidates did not create a special duty to protect particular members of the public against crimes committed by released prisoners).

 The statute creating a duty to notify delinquent taxpayers in the current case is different from the statutes involved in these previous cases. All requirements of law leading up to tax sales are intended for the protection of the taxpayer against surprise or the sacrifice of his property and are regarded as mandatory and are strictly enforced. *Dibble v. Bryant,* 274 S.C. 481, 265 S.E.2d 673 (1980). Failure to give the required notice is a fundamental defect in the tax proceedings which renders the proceedings absolutely void. *Donohue v. Ward,* 298 S.C. 75, 378 S.E.2d 261 (Ct.App.1989). This Court will set aside sales where section 12–51–40 has not been complied with by public officials. *See Snelgrove v. Lanham,* 298 S.C. 302, 379 S.E.2d 904 (1989).

 As a notice provision, section 12–51–40 creates a special duty. However, every failure of a delinquent taxpayer to receive notice does not automatically qualify for the special duty exception to the public duty doctrine. It is only in cases such as this one where the delinquent taxpayer asserts that he provided the County his correct address and the County failed to use that address that the special duty exception may arise. Even then, summary judgment based on tort immunity may be appropriate if the delinquent taxpayer cannot provide any evidence that the County had a corrected address. In the

current case, Petitioner was never given the chance to put forth that evidence.

## CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is **REVERSED.**

FINNEY, C.J., MOORE and BURNETT, JJ., concur.

WALLER, J., not participating.